James B. ESTES, Appellant,

v.

DALLAS COUNTY CHILD WELFARE UNIT OF the TEXAS DEPARTMENT OF HUMAN SERVICES, Appellee.

No. 05–88–00282–CV.

Court of Appeals of Texas, Dallas.

July 13, 1989.

Rehearing Denied Aug. 8, 1989.

Elizabeth L. DeRieux, Dallas, for appellant.

Timothy B. Couch, Dallas, for appellee.

Before STEWART, THOMAS, and WHITTINGTON, JJ.

THOMAS, Justice.

James B. Estes appeals from a judgment which terminated any rights he might have as the alleged biological father of a child named E.M.R.[1] In three points of error, Estes argues that the trial court erred: (1) by ruling that he did not timely file an admission of paternity as required by section 15.023 of the Texas Family Code; (2) by denying him representation through court appointed counsel; and (3) by providing him less protection and due process than that provided to the mother. We sustain the first point, reverse the trial court's judgment, and remand this case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Appellee the Dallas County Child Welfare Unit of the Texas Department of Human Services, filed a petition to terminate the rights of the mother and to terminate any rights that Estes might have with respect to E.M.R., the child. The petition for termination alleges that Estes is the biological father. Estes filed a pro se answer, generally denying all allegations in the petition. He also alleged that he was an indigent parent and requested the trial court to appoint an attorney ad litem to represent him in this lawsuit. In a separate document, Estes requested a hearing on any contest of his affidavit of indigency. Because at the time he was confined in a unit of the Texas Department of Corrections, Estes asked the trial court to issue a bench warrant to ensure his presence at any hearing on indigency.

The trial court denied Estes's requests for an indigency hearing and for appointment of an attorney to represent him. The court found that Estes had failed to respond by timely filing an admission of paternity or a counterclaim for paternity or for voluntary legitimation as required by section 15.023 of the Texas Family Code. The trial court then rendered judgment that any rights that Estes might have with respect to E.M.R. were terminated.

## ADMISSION OF PATERNITY

In the first point of error, Estes contends that the trial court committed reversible error by ruling that he did not timely file an admission of paternity pursuant to section 15.023. That provision states:

The procedural and substantive standards for termination of parental rights under Title 2 of this code shall apply to the termination of the rights of an alleged or probable father with respect to an illegitimate child. In addition, the rights of an alleged or probable father with respect to an illegitimate child may also be terminated if, after being served with citation in a suit affecting the parent-child relationship, the alleged or probable father does not respond by timely filing an *admission of paternity* or by filing a counterclaim for paternity or for voluntary legitimation to be adjudicated under Chapter 13 of this code *prior to the final hearing* in the suit.

TEX.FAM.CODE ANN. § 15.023 (Vernon Supp.1989) (emphasis added). The record establishes that on November 18, 1987, two weeks before the final hearing of the suit for termination, Estes filed his pro se answer. In that document, he alleged that he "is an 'indigent parent' within the meaning of Texas Family Code § 11.10(d)." Estes argues on appeal that his answer was sufficient to constitute a timely filed admission of paternity. We agree.

■ There is no provision in the Texas Family Code that specifies any particular form or language required for an admission of paternity. The code does prescribe requirements for a statement of paternity. *See* TEX.FAM.CODE ANN. § 13.22 (Ver-

1. The parental rights of the mother were terminated at the same time; however, she has not ap-

pealed.

non 1986). We conclude that if the Texas Legislature had meant to require a statement of paternity under section 15.023, it would have used the words "statement of paternity" instead of "admission of paternity." Since the Legislature did not use those words, it follows that Estes did not have to satisfy the requirements of section 13.22 regarding statements of paternity.

■ We must next determine if Estes's answer was sufficient to constitute an admission of paternity. We note that the child's guardian ad litem told the trial court that Estes had described himself as an indigent parent. The guardian said that this reference indicated to him that Estes saw himself as a parent. The trial court apparently rejected this reasoning, noting that Estes was not a parent as defined by the Texas Family Code. *See* TEX.FAM. CODE ANN. § 11.01(3) (Vernon Supp. 1989). Estes contends on appeal that his answer was specific enough to put the trial court and Child Welfare on notice that he admitted his paternity and wanted to oppose termination of any rights he might have with respect to the child.

■ Because the natural rights existing between a parent and child are of constitutional dimensions, involuntary termination proceedings must be strictly scrutinized. *See Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); *In re S.H.A.,* 728 S.W.2d 73, 86 (Tex.App.—Dallas 1987, no writ) (en banc). The rights of biological fathers of illegitimate children are protected by the Texas Equal Rights Amendment, Tex. Const. art. I, § 3a. *In the Interest of McLean,* 725 S.W.2d 696 (Tex.1987). In applying the required strict scrutiny to this case, we are compelled to agree with the arguments stated by Estes and the guardian ad litem. Estes's answer was sufficient to indicate that he was admitting and, indeed, asserting paternity. We hold that his answer constituted an admission of paternity that was timely filed since it was filed prior to the final hearing in the suit for termination. The trial court erred in ruling otherwise. We sustain Estes's first point of error.

Because of our disposition of the first point of error, it is unnecessary to consider the remaining points. We reverse the trial court's judgment, and remand the case for further proceedings consistent with this opinion.