02-09-452-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00452-CV

 

 


 
 
 In the Interest of A.S.L., A Child
 
 
  
 
 
  
 
 


 

 

----------

 

FROM THE 324th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

                                                        ----------

 

Appellant
C.A. appeals the trial court’s order terminating his parental rights to his
child, A.S.L. (Adam).[2] 
In one point, appellant contends that the evidence is legally and factually
insufficient to support the trial court’s findings under section 161.001(1) of the
family code.[3]  We affirm.

Background
Facts

          Adam
was born in May 2007 to D.C. (Mother) and appellant.  Appellant was not present
at Adam’s birth, and Mother put appellee M.L.’s name on the birth certificate
because she was confused and “wasn’t really sure” who the father was.  Mother
had moved in to live with appellee approximately four months prior to Adam’s
birth.[4]  To resolve the doubts as
to the identity of Adam’s father, appellant and Mother completed DNA testing. 
The results of the test confirmed that appellant is the biological father.[5] 
Appellant saw Adam one to two times per week for about three or four months
after his birth, but then appellant stopped seeing Adam awhile because appellant
and Adam’s grandmother had an argument.

          In
September 2008, appellant filed a pro se petition to establish parentage.  Later,
appellant hired an attorney and appeared by counsel.  In March 2009, the trial court
ordered up to three supervised visits per week for appellant.  Although
appellant exercised this right once and saw Adam for the first time since 2007,
he failed to visit Adam at any other time during the pendency of the case.  In
July 2009, the trial court allowed appellant’s counsel to withdraw from
representation.  Appellant did not retain substitute counsel and has continued
pro se through the end of trial and this appeal.

          On
July 1, 2009, appellee filed a counterpetition, in which he asked the trial court
to terminate appellant’s parent-child relationship with Adam and to name
appellee sole managing conservator.  The trial court held a termination trial in
December 2009, at which time Adam was two and a half years old.  The bench trial,
in which appellant, Mother, and appellee testified, lasted less than one day. At
the end of the trial, the court announced its decision to terminate appellant’s
parental rights.

          In
February 2010, the trial court entered an order that adjudicated appellant as Adam’s
biological father, terminated appellant’s parental rights, and appointed Mother
and appellee as joint managing conservators.  The trial court found that clear
and convincing evidence established that appellant (1) voluntarily left Adam
alone or in the possession of another not the parent without expressing an
intent to return, without providing for the adequate support of Adam, and
remained away for a period of at least three months and (2) failed to support Adam
in accordance with his ability during a period of one year ending within six
months of the date of the filing of the termination petition.  See Tex.
Fam. Code Ann. § 161.001(1)(B), (F).  The court also found by clear and
convincing evidence that termination was in Adam’s best interest.  See id.
§ 161.001(2).

          Appellant
filed a notice of appeal.  The trial court declined to appoint appellate
counsel for appellant.[6]

Sufficiency
of the Evidence to Support Termination

          In
his sole point, appellant challenges the termination of his parental rights,
complaining that the evidence is legally and factually insufficient to support
the trial court’s findings on the grounds of section 161.001(1), subsections
(B) and (F).  Appellant does not contest the trial court’s finding that
termination of the parent-child relationship is in the best interest of the
child.

          A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While parental
rights are of constitutional magnitude, they are not absolute.  Just as it is
imperative for courts to recognize the constitutional underpinnings of the
parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the petitioner
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers normally
existing between them, except for the child’s right to inherit.  Tex. Fam. Code
Ann. § 161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985).  We strictly scrutinize termination proceedings and strictly
construe involuntary termination statutes in favor of the parent.  Holick,
685 S.W.2d at 20–21; In re R.R., 294 S.W.3d 213, 233 (Tex. App.—Fort
Worth 2009, no pet.).

          In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute.  Tex. Fam. Code Ann. § 161.001(1); In re
J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Termination decisions must be
supported by clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, .206(a). 
Evidence is clear and convincing if it “will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.”  Id. § 101.007 (Vernon 2008).  Due process demands
this heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In re J.F.C., 96 S.W.3d 256, 263
(Tex. 2002).

          In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that appellee proved the grounds for termination.  See
In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the
evidence in the light most favorable to the finding and judgment.  Id. 
We resolve any disputed facts in favor of the finding if a reasonable
factfinder could have done so.  Id.  We disregard all evidence that a
reasonable factfinder could have disbelieved.  Id.  We consider
undisputed evidence even if it is contrary to the finding.  Id.  That
is, we consider evidence favorable to termination if a reasonable factfinder
could, and we disregard contrary evidence unless a reasonable factfinder could
not.  Id.

          We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573–74.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

          In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In re
H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We must determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that appellant violated subsections (B) or (F) of section 161.001(1).  See
Tex. Fam. Code Ann. § 161.001(1)(B), (F); In re C.H., 89 S.W.3d at 28.  If,
in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

          Section
161.001(1)(F) allows involuntary termination where the parent has failed to
support the child in accordance with the parent’s ability during a period of
one year ending within six months of the date of the filing of the petition.
Tex. Fam. Code Ann. § 161.001(1)(F); see In re E.M.E., 234 S.W.3d
71, 72 (Tex. App.—El Paso 2007, no pet.) (“The one-year period begins no
earlier than eighteen months before the petition to terminate is filed.”).  One
year means twelve consecutive months, and there must be proof the parent had
the ability to support during each month of the twelve-month period.  E.M.E.,
234 S.W.3d at 72; see In re L.J.N., 329 S.W.3d 667, 672 (Tex.
App.—Corpus Christi 2010, no pet.); In re J.R., 319 S.W.3d 773, 777
(Tex. App.—El Paso 2010, no pet.); In re Z.W.C., 856 S.W.2d 281, 283
(Tex. App.—Fort Worth 1993, no writ).  The burden of proof is on the party
seeking termination to prove by clear and convincing evidence that the parent
had the ability to pay during each of the months.  L.J.N., 329 S.W.3d at
672; E.M.E., 234 S.W.3d at 72.

          Appellee
filed his “First Amended Counter-Petition to Adjudicate Parentage,” which
sought to terminate the parent-child relationship between appellant and Adam,
on July 1, 2009.[7]  Thus, we must determine
whether the evidence establishes that appellant failed to support Adam for
twelve consecutive months between January 1, 2008 and July 1, 2009, and whether
the evidence establishes that appellant had an ability to pay within that same
twelve-month period.  See E.M.E., 234 S.W.3d at 72 (“Given that
Elkabachi filed her petition on May 17, 2006, we must determine whether the
evidence established that Carrillo failed to support the child for twelve
consecutive months between November 17, 2004 and May 17, 2006.”).

          Appellant
admitted that he had not paid child support to any person at least since the
time he filed his petition to establish parentage on September 29, 2008.  He
testified that he gave between $75 and $150 a week to Adam’s grandmother until
the two got into an argument sometime prior to the time he filed the petition.  On
cross-examination, however, he conceded, “I guess it was 2007” when he had last
“provided any sort of financial support for the child.”  In any event, both
Mother and appellee testified that neither had received any support from appellant
at any time since Adam was born.  Thus, the evidence supports the trial court’s
determination that appellant failed to support the child for a period of twelve
consecutive months between January 1, 2008 and July 1, 2009.

          The
record also supports the trial court’s finding that appellant had an ability to
pay during the relevant period.  Appellant was working as a tattoo artist when Adam
was born in 2007.  During the early months of 2008, appellant owned two tattoo
shops, which generated income for him until he was arrested on June 5, 2009.[8] 
As the owner of the tattoo shops, he earned $5,000 to $6,000 each month, receiving
$3,500 average monthly net income.  Also, the evidence reveals that appellant
made payments to Father’s Choice in an effort to see Adam despite being
dissatisfied with the services he had received and that he paid for an attorney
in connection with this case.[9]  Therefore, evidence
supports the trial court’s determination that appellant had an ability to
support Adam during each month of the period.

          Appellant
cites Prokopuk v. Offenhauser to support his argument that he had no
duty to support the child until after his paternity was officially
established.  801 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, writ
denied) (“We . . . hold that where a father has doubts as to his paternity,
there is no enforceable obligation to support an illegitimate child before
paternity is established.”) (emphasis added).  However, unlike the mother in Prokopuk,
who denied the appellant’s paternity at all times from the child’s birth until
the conclusion of the trial, Mother and appellee have recognized appellant as
the biological father at all times since receiving the DNA test results and
even stipulated to that fact at trial.  Appellant acted like Adam’s father in
2007 when he visited Adam, provided some financial support for him, and hired
Father’s Choice once the argument with Adam’s grandmother occurred.  Appellant has
never doubted or disputed his paternity.  Thus, we hold that appellant had a
duty to support Adam at least by January 1, 2008, and continuing in the time
period relevant to section 161.001(1)(F).  See In re B.T., 954 S.W.2d
44, 49 (Tex. App.—San Antonio 1997, writ denied) (“Th[e] duty of support exists
regardless of whether a parent is court-ordered to support the child.”); R.W.
v. Tex. Dep’t of Protective & Regulatory Servs., 944 S.W.2d 437, 440
(Tex. App.—Houston [14th Dist.] 1997, no writ) (“And just like all other
parents, these duties arose long before appellant filed his voluntary statement
of paternity and without regard to any adjudication by a court establishing his
parentage.  The duty existed from the moment appellant, by his actions,
recognized the child as his own.”); Jimenez ex rel. Little v. Garza, 787
S.W.2d 601, 603 (Tex. App.—El Paso 1990, no writ) (“[T]here would be no duty
arising in absence of a court order, where a father has doubt as to his
paternity.  But where there is a judicial admission or an unequivocal
unretracted acknowledgment, the duty to support addressed in termination
proceedings should commence from the date of admission or acknowledgment.”)
(emphasis added); see also In re D.M.F., 283 S.W.3d 124, 133 (Tex. App.—Fort
Worth 2009, pet. granted, judgm’t vacated w.r.m.) (reasoning that a parent has
an enforceable obligation to support a child once the parent has unequivocally
acknowledged paternity).

          For
these reasons, we hold that the evidence is legally and factually sufficient to
support the trial court’s finding that appellant’s parental rights to Adam should
be terminated under subsection (F) of section 161.001(1).  We overrule
appellant’s sole point.[10]

          Because
a petitioner must establish only one of the acts or omissions enumerated under
subdivision (1) of section 161.001, we will not address whether the evidence is
legally and factually sufficient to support the trial court’s finding under
subsection (B).  See Tex. Fam. Code Ann. § 161.001(1); Tex. R. App. P.
47.1; In re S.B., 207 S.W.3d 877, 886 (Tex. App.—Fort Worth 2006, no
pet.).

Conclusion

          Having
overruled appellant’s only point, we affirm the trial court’s order terminating
appellant’s parental rights to Adam.[11]

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  May 26, 2011









[1]See Tex. R. App. P. 47.4.





[2]To protect the identity of
the parties, we will identify them through initials and aliases.  See
Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008); Tex. R. App. P. 9.8(b).





[3]See Tex. Fam. Code
Ann. § 161.001(1) (Vernon Supp. 2010).





[4]Mother and appellee have
lived together off and on since 2000.





[5]The parties also
stipulated at trial that appellant is Adam’s father.





[6]Appellant’s brief asserts a
complaint regarding his entitlement to counsel in the termination trial below. 
But although the trial court had the discretion and authority to appoint
counsel, appellant was not entitled to counsel.  See Tex. Fam. Code Ann.
§ 107.013(a)(1) (Vernon 2008) (explaining that in a “suit filed by a
governmental entity in which termination of a parent-child relationship is
requested,” the trial court shall appoint an attorney ad litem to represent the
interests of an indigent parent who responds in opposition to the termination)
(emphasis added); In re J.C., 250 S.W.3d 486, 489 (Tex. App.—Fort Worth
2008, pet. denied) (“Because Tracy’s parental rights were terminated pursuant
to a private termination suit, she possessed no mandatory statutory right to
appointed counsel.”), cert. denied, 130 S. Ct. 1281 (2010); see also
In re C.M.R., No. 02-07-00394-CV, 2008 WL 4963510, at *2 (Tex. App.—Fort
Worth Nov. 20, 2008, no pet.) (mem. op.) (explaining that “the appointment of
counsel in a private termination is within the trial court’s sound discretion”). 
Thus, to the extent appellant attempts to assert the complaint about not having
counsel as a separate point, we overrule it.





[7]The original
counterpetition, which appellee filed in October 2008, did not request
termination of appellant’s parental rights.





[8]At the time of the
termination trial, appellant was incarcerated with bail set at $1,000,000
pending his criminal trial.  He had been charged with two counts of attempted
capital murder of a police officer and possession of prohibited weapons.  He
acknowledged that he could face a life sentence if convicted.  He testified,
“I do understand that I might be put away for a while.”





[9]Appellant states in his
brief that he made monthly payments to Father’s Choice for “legal counsel.”





[10]Additionally, appellant
asserts that the trial court violated his due process rights when it terminated
his parental rights.  However, he fails to cite case law or provide analysis
explaining how the proceedings below denied him due process.  Because
appellant’s brief does not contain adequate argument supporting his contention
about due process, we overrule the contention.  See Tex. R. App. P. 38.1(i);
In re J.B.W., 99 S.W.3d 218, 225 n.35 (Tex. App.—Fort Worth 2003, pet.
denied).  We note that appellant initiated this case by filing his petition to establish
parentage, that the termination order recites that “all persons entitled to
citation were properly cited,” and that appellant was represented during part
of the trial court’s proceedings and appeared and testified at trial.  See In
re K, 520 S.W.2d 424, 427–28 (Tex. Civ. App.—Corpus Christi 1975) (rejecting
a parent’s argument of denial of due process in an analogous procedural
scenario), aff’d, 535 S.W.2d 168 (Tex.), cert. denied, 429 U.S.
907 (1976)).





[11]In August and September
2010, appellant filed motions in this court concerning unsealing the trial
court’s record so that he could comply with the briefing requirements contained
in the rules of appellate procedure.  The trial court unsealed the record on
October 1, 2010, and appellant has not requested to amend his brief since that
time.  Thus, we deny as moot appellant’s “Motion to Unseal Court Records and
Request Extension of Time to File Appeallants [sic] Brief” and “Motion for
Extension of Time.”  See Eastman v. Willowick Apartments, 139 S.W.3d
348, 349 (Tex. App.—Fort Worth 2004, no pet.).