COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | |
|---|---|
| § | No. 08-18-00058-CV |
| § | |
| IN THE INTEREST OF § | Appeal from |
| § | |
| O.R.M., JR., M.M., AND O.M., § | 65th District Court |
| § | |
| CHILDREN. § | of El Paso County, Texas |
| § | (TC # 2017DCM0331) |
| § | |

# **O P I N I O N**

This appeal is from a judgment terminating the parental rights of Appellant, O.M., to his children, O.R.M., Jr., M.M., and O.M. We affirm.

## **FACTUAL SUMMARY**

Appellant (Oliver) and D.L. (Dora) are the parents of three children, O.R.M., Jr., M.M., AND O.M.[1] Oliver and Dora were not formally married but Dora testified that they were together for more than fifteen years. Child Protective Services became involved with the family in October

---

[1] To protect the identity of the children, the opinion will refer to Appellant by the fictitious name "Oliver" and to D.L. by the fictitious name "Dora". *See* TEX.R.APP.P. 9.8. The trial court entered an order terminating Dora's parental rights to the children and Dora appealed. On May 16, 2018, we granted Dora's motion to dismiss her appeal. *See In the Interest of O.R.M., Jr., M.M., and O.M.*, 08-18-00058-CV, 2018 WL 2227780 (Tex.App.--El Paso May 16, 2018, no pet.). With the exception of facts provided to establish background and context, the opinion will be limited to a discussion of the facts and issues pertinent to Oliver's appeal.

2016 due to concerns regarding Dora's drug use[2] and instability of the home. Oliver was incarcerated[3] at the time. The children were placed with their maternal grandmother, but she subsequently informed the Texas Department of Family and Protective Services that she could no longer care for the children because she and her fiancé were moving to Virginia. The Department removed the children and filed a petition in January 2017 seeking to terminate Dora's parental rights. The petition also requested that the trial court determine whether Oliver is the father of the children and to terminate his parental rights if, after being served with citation, he has not responded by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160 or he has not registered with the paternity registry under Chapter 160, Texas Family Code. The trial court found that the Department had proven the termination ground alleged in the petition by clear and convincing evidence, and that termination of Oliver's parental rights was in the children's best interest. The trial court appointed the Department as the permanent managing conservator of the children.

## ALLEGED BIOLOGICAL FATHER

Oliver raises two issues challenging the termination of his parental rights under Section 161.002. We have construed the issues as asserting that the evidence is legally and factually insufficient to support termination of his parental rights under Section 161.002.

### Standards of Review

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In*

---

[2] Dora tested positive for methamphetamine and amphetamine on November 9, 2016.

[3] At the time of trial, Oliver was incarcerated on a weapons charge and serving a seventy-seven-month sentence.

*the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

*Section 161.002(b)(1)*

In Issue One, Oliver contends that he made an informal admission of paternity sufficient to avoid summary termination of his parental rights under Section 161.002(b)(1). This statute provides that the rights of an alleged biological father may be summarily terminated if after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160 of the Texas Family Code. TEX.FAM.CODE ANN. §

161.002(b)(1)(West Supp. 2017). By filing an admission or counterclaim for paternity, the alleged father is given the right to require the petitioner to prove by clear and convincing evidence one of the predicate termination grounds set forth in Section 161.001(1) and that termination is in the best interest of the child. *Phillips v. Texas Department of Protective & Regulatory Services*, 25 S.W.3d 348, 357 (Tex.App.--Austin 2000, no pet.).

The trial court found by clear and convincing evidence that Oliver, after being served with citation, did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160 of the Texas Family Code before the final hearing in the case. The Department introduced into evidence a return of citation showing that Oliver was served with the termination petition and a certificate of paternity registry search establishing that he did not register his intent to claim paternity with respect to any of the three children. *See* TEX.FAM.CODE ANN. § 161.109. The record also shows that Oliver did not file an admission of paternity or a counterclaim for paternity under Chapter 160.

Despite the foregoing evidence showing that he did not respond in the manner required by Section 161.002(b)(1), Oliver argues that the record demonstrates that he nevertheless claimed paternity of the children in writing and this is sufficient to prevent summary termination of his parental rights. More specifically, Oliver points to his handwritten note made in the section of the family service plan designated for the parent's comments. It reads:

> I will follow through this plan only because I love my kids so much that I'm willing to take full custody of them. The blemish is on the mothers behave [sic]. I have nothing to do with what she was doing. If the mother doesn't comply, I will. I already seen she has failed one's [sic]. With the documents I got in the mail from C.P.S. Plus I do fear for my kids [sic] life being around people like that. I care for them a lot. So I prefer my kids to be with me as soon as I get a chance to take them with me. Thanks.

Oliver placed his signature at the bottom of the note. The service plan, including Oliver's handwritten note, was filed with the trial court clerk on March 30, 2017, and it was introduced into evidence at trial. Oliver cites *Toliver v. TDFPS*, 217 S.W.3d 85, 105 (Tex.App.--Houston [1st Dist.] 2006, not pet.), *Estes v. Dallas County Child Welfare Unit of Texas Department of Human Services*, 773 S.W.2d 800, 802 (Tex.App.--Dallas 1989, writ denied), and *In re K.W.*, 138 S.W.3d 420, 429 (Tex.App.--Fort Worth 2004, pet. denied) in support of his argument that his note constitutes a sufficient claim of paternity to preclude summary termination under Section 161.002. In *Toliver*, the alleged father did not file any written documents claiming paternity, but he appeared at trial and stated that he was the child's father. *Toliver*, 217 S.W.3d at 105. The First Court of Appeals concluded that the alleged father's unequivocal assertion of paternity at trial triggered his right to require the Department to prove one of the predicate termination grounds under Section 161.001(1) before his parental rights could be terminated. *Id.* The instant case is factually distinguishable because Oliver did not appear at trial and make an unequivocal assertion of paternity.

In *Estes*, the alleged biological father filed a *pro se* answer after being served with the termination petition. *Estes*, 773 S.W.2d at 801. The answer generally denied all of the allegations, and Estes requested the appointment of counsel based on his assertion that he was an indigent parent. *Id.* The Dallas Court of Appeals concluded that Estes' answer constituted an admission of paternity because he characterized himself as an "indigent parent". *Id.*, 773 S.W.2d at 802. Our case is distinguishable because Oliver did not file a general denial of the allegations in the termination petition and he did not describe himself as the children's father.

*In re K.W.* shares some factual similarities with the instant case. In that case, the Texas Department of Protective and Regulatory Services ("TDPRS") served a petition seeking

termination of parental rights on an alleged father who was incarcerated. *In re K.W.*, 138 S.W.3d at 429. The father wrote letters to both TDPRS and the trial court stating that he was the child's biological father and he was not giving up his parental rights. *Id.* Noting that the statute does not require a formal "statement of paternity," the Second Court of Appeals held that the father's letters constituted admissions of paternity sufficient to put TDPRS and the trial court on notice that the father admitted his paternity and wanted to oppose termination of any rights he might have with respect to the child. *Id.* at 431. Consequently, the Court concluded that there was no evidence to support the trial court's finding under Section 161.002(b)(1). *Id.* at 431.

The father-child relationship is established by an effective acknowledgment of paternity by the man under Subchapter D,[4] unless the acknowledgment has been rescinded or successfully challenged. TEX.FAM.CODE ANN. § 160.201(b)(2). Section 160.301 provides that the mother of a child and a man claiming to be the biological father of the child may sign an acknowledgment of paternity with the intent to establish paternity. TEX.FAM.CODE ANN. § 160.301. Section 161.302 establishes the formal requirements for a voluntary "acknowledgement of paternity." *See* TEX.FAM.CODE ANN. §160.302 (West 2014). It requires that an acknowledgement of paternity (1) be in a record; (2) be signed or otherwise authenticated, under penalty of perjury by the mother and the man seeking to establish paternity; (3) state that the child whose paternity is being acknowledged: (A) does not have a presumed father or has a presumed father whose name is stated; and (B) does not have another acknowledged or adjudicated father; (4) state whether there has been genetic testing and, if so, that the acknowledging man's claim of paternity is consistent with the results of the testing; and (5) state that the signatories understand that the acknowledgment is the equivalent of a judicial adjudication of paternity of the child and that a challenge to the

---

[4] Subchapter D governs voluntary acknowledgment of paternity. *See* TEX.FAM.CODE ANN. §§ 160.301-.315 (West 2014 & Supp. 2017).

acknowledgment is permitted only under limited circumstances. *See* TEX.FAM.CODE ANN. § 160.302 (West Supp. 2017).

Section 161.002(b)(1) requires only an "admission of paternity" and does not require that an alleged biological father file a formal acknowledgment of paternity in accordance with Section 160.302. *See Estes*, 773 S.W.2d at 801-02 (drawing a distinction between a formal "statement of paternity" and an "admission of paternity"). While we agree with the Fort Worth Court of Appeals' analysis in *K.W.*, Oliver's handwritten note cannot be characterized as an unequivocal admission of paternity. Oliver makes a general reference to "my kids" in the note and expresses a desire to protect the children from the consequences of Dora's conduct, but he does not admit that he is the biological father of each of the three children. Further, the note does not express any opposition to termination of his parental rights because Oliver's agreement to comply with the service plan is contingent on Dora's failure to comply with the requirements imposed on her. We conclude that Oliver's handwritten note does not constitute an admission of paternity and it is insufficient to preclude summary termination of his parental rights under Section 161.002(b)(1).

*Presumption of Paternity*

Oliver additionally argues that he proved by uncontroverted evidence the existence of a common law marriage, and therefore, he is the presumed father of the children. The father-child relationship is established by an unrebutted presumption of the man's paternity of the child under Section 160.204 of the Texas Family Code. TEX.FAM.CODE ANN. § 160.201(b)(1). Under Section 160.204(a)(1), a man is presumed to be the father of a child if he is married to the mother of the child and the child is born during the marriage. TEX.FAM.CODE ANN. § 160.204(a)(1).

An informal or common-law marriage exists in Texas if the parties (1) agree to be married, (2) live together in Texas as husband and wife after the agreement, and (3) represent to others that

they are married. *See* Tex.Fam.Code Ann. § 2.401(a)(2)(West 2006); *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *In the Interest of C. M. V*., 479 S.W.3d 352, 360 (Tex.App.--El Paso 2015, no pet.). The existence of an informal marriage is a fact question, and the party seeking to establish the existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence. *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex.App.--Texarkana 2013, no pet.). An informal marriage does not exist until the concurrence of all three elements. *In re C.M.V.*, 479 S.W.3d at 360, *citing Burden*, 420 S.W.3d at 308.

Oliver had the burden in the trial court to establish each element of a common law marriage by a preponderance of the evidence. He argues on appeal that he proved the existence of a common law marriage by uncontroverted evidence. We have construed this argument as raising a matter of law challenge to the legal sufficiency of the evidence supporting an adverse finding. For Oliver to succeed on appeal, the evidence must establish each element of a common-law marriage as a matter of law. *See Burden v. Burden*, 420 S.W.3d 305, 307 (Tex.App.--Texarkana 2013 no pet.), *citing Dow Chemical Company v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)(explaining that party attacking legal sufficiency of adverse finding on issue on which party bears burden of proof "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue" and that party may prevail on appeal only if no evidence supports the adverse finding and the contrary proposition is conclusively established).

Proof of an agreement to be married may be made by circumstantial evidence or conduct of the parties. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others, but this evidence may be circumstantial evidence of an agreement to be married. *Id.*; *Burden*, 420 S.W.3d at 308. To establish that the parties agreed to be married, it must be shown

- 8 -

that they intended to create an immediate and permanent marriage relationship, not merely a temporary cohabitation that may be ended by either party. *Burden*, 420 S.W.3d at 308, *citing Eris v. Phares*, 39 S.W.3d 708, 714 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).

A caseworker, Perla Pena, testified that Dora told her that she and Oliver were married, but they were not "legally married". Consistent with Pena's testimony, Dora testified that she and Oliver are not legally married, but they "have been together for more than 15 years." Dora also asserted that she referred to Oliver as her husband, but when asked if they told other people they were married, Dora stated: "We tried getting married one time, but it just didn't work out like that so we just left it alone." The couple's cohabitation and Dora's reference to Oliver as her husband is insufficient to prove, as a matter of law, an agreement to be married. Consequently, Oliver failed to establish the existence of an informal marriage and he is not presumed to be the father of the children.

Having found the evidence both legally and factually sufficient to support the findings made by the trial court under Section 161.002(b)(1), we overrule Issue One. *See R.H. v. Texas Department of Family & Protective Services*, 550 S.W.3d 631 (Tex.App.--El Paso 2013, no pet.); *Phillips*, 25 S.W.3d at 357. Issue One is overruled.

*Failure to Register with Paternity Registry*

In Issue Two, Oliver challenges the termination of his parental rights on the ground that he failed to register with the paternity registry. The Family Code allows for the termination of an alleged father's parental rights if he fails to register with the paternity registry under specified circumstances. *See* TEX.FAM.CODE ANN. § 161.002(b)(2), (3), (4). The termination order is supported by the trial court's findings made under Section 161.002(b)(1). Consequently, it is

unnecessary to address the merits of Issue Two. The judgment of the trial court terminating Oliver's parental rights is affirmed.

September 26, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.