

# NUMBER 13-17-00429-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ENRIQUE ANGEL RAMOS,                                                 Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION ON REMAND

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion on Remand by Justice Hinojosa**

By memorandum opinion and judgment dated July 23, 2020, this Court affirmed

appellant Enrique Angel Ramos's conviction for continuous sexual abuse of a child but

vacated his conviction for prohibited sexual conduct on double jeopardy grounds.[1] *See*

---

[1] The Honorable Gregory T. Perkes, former Justice of this Court, authored the original memorandum opinion in this case; however, he did not participate in this decision on remand because his

*Ramos v. State*, No. 13-17-00429-CR, 2020 WL 4219574, at *11 (Tex. App.—Corpus Christi–Edinburg July 23, 2020) (mem. op., not designated for publication), *rev'd*, 636 S.W.3d 646 (Tex. Crim. App. 2021). On the State's petition for discretionary review, the Texas Court of Criminal Appeals reversed that portion of our judgment vacating the prohibited sexual conduct conviction and remanded the case for further consideration of Ramos's remaining issue challenging the sufficiency of the evidence supporting that conviction. *See Ramos*, 636 S.W.3d at 657–58 (concluding that "continuous sexual abuse of a child and prohibited sexual conduct are not the same offense for purposes of a multiple-punishments double-jeopardy analysis"). In that issue, Ramos argues that there is legally insufficient evidence that the complainant, Alicia Gonzalez,[2] was his stepdaughter. We affirm.

## I.    LEGAL SUFFICIENCY[3]

## A.    Standard of Review & Applicable Law

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d

---

term of office expired on December 31, 2020. In accordance with the appellate rules, he was replaced on panel by Chief Justice Dori Contreras. *See* TEX. R. APP. P. 41.1(a).

[2] Alicia Gonzalez was the pseudonym used at trial to protect the minor complainant's identity. We will likewise refer to the complainant by her pseudonym and to her family members by their initials. *See* TEX. R. APP. P. 9.8 cmt.; *Salazar v. State*, 562 S.W.3d 61, 63 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

[3] Within our analysis we will provide the background necessary to address Ramos's remaining issue. A full recitation of the facts can be found in our original memorandum opinion. *See Ramos v. State*, No. 13-17-00429-CR, 2020 WL 4219574, at *11 (Tex. App.—Corpus Christi–Edinburg July 23, 2020) (mem. op., not designated for publication), *rev'd*, 636 S.W.3d 646 (Tex. Crim. App. 2021).

159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240).

The indictment in this case charged Ramos with committing prohibited sexual conduct by intentionally or knowingly engaging in sexual intercourse with Alicia, a person Ramos knew to be, without regard to legitimacy, Ramos's stepchild.[4] *See* TEX. PENAL CODE ANN. § 25.02(a)(2). Thus, a hypothetically correct jury charge in this case would require the State to prove that: (1) Ramos, (2) engaged in sexual intercourse with Alicia, (3) Alicia was Ramos's stepdaughter, and (4) Ramos knew that Alicia was his stepdaughter. *See id.* Ramos challenges only the third element of the offense, arguing

---

[4] Section 25.02 of the penal code provides in relevant part that "[a] person commits an offense if the person engages in sexual intercourse or deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy . . . the actor's current or former stepchild[.]" TEX. PENAL CODE ANN. § 25.02(a)(2). The current prohibited sexual conduct statute is "a carryover from earlier penal codes" which have long criminalized incest. *Ramos*, 636 S.W.3d at 655.

that there was legally insufficient evidence to establish that Alicia was Ramos's stepdaughter.

The term stepdaughter is not defined by the Texas Penal Code. Therefore, we "may articulate a definition [of the term] in assessing the sufficiency of the evidence[.]" *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012); *see Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). In doing so, we look to the common, ordinary meaning of the word. *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *see Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000) (explaining that "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance"). "In determining the ordinary and common meaning of an undefined word in a statute, we may consider dictionary definitions." *Davis v. State*, 533 S.W.3d 498, 506 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim. App. 2004)). Stepdaughter is defined as "a daughter of one's wife or husband by a former partner[.]" *Stepdaughter*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/stepdaughter (last visited Jun. 21, 2022).

## B.    Pertinent Facts

In Ramos's recorded interview with law enforcement, he identified Alicia's mother C.E. as his wife, explaining that they are married by common law. Ramos stated that the two resided together and had four children of their own. He explained that C.E. had two children from a prior relationship, including Alicia. He described that he and C.E. had "form[ed] a family." In his signed written statement, Ramos stated that Alicia is his

4

stepchild.

At trial, Ramos testified that C.E. was his wife and that they had been together for nine to ten years. He identified Alicia as his daughter. He explained that Alicia was three years old when he began a "family relationship" with C.E. Ramos asserted that he was the sole provider for his family. During her testimony, C.E. identified Ramos's sister as her sister-in-law. C.E. testified that she lived with Ramos for approximately ten years and that the couple "held each other out as husband and wife." During her testimony, Alicia identified Ramos as her stepfather, and she stated that she called him "dad" when they lived together.

## C.     Analysis

Citing the law governing family law proceedings, Ramos maintains that there was legally insufficient evidence of a common-law marriage between himself and C.E. as necessary to establish that Alicia was his stepdaughter. However, Ramos's argument ignores his own testimony that he was Alicia's stepfather and that he was married to Alicia's mother. A rational trier of fact could have found that Alicia was Ramos's stepdaughter beyond a reasonable doubt based on Ramos's trial admission alone.[5] *See Hernandez v. State*, 610 S.W.3d 106, 110 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (holding that "the jury could have found the essential elements of the offense beyond a reasonable doubt" based on defendant's own testimony); *Barrios v. State*, 389 S.W.3d 382, 400 (Tex. App.—Texarkana 2012, pet. ref'd) (concluding that defendant's own

---

[5] The corpus delecti rule, which requires corroborating evidence of an extrajudicial confession, does not apply to Ramos's trial testimony. *See Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015). ("The corpus delicti rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession.").

testimony established he was guilty of murder); *Gruber v. State*, 812 S.W.2d 368, 370 (Tex. App.—Corpus Christi–Edinburg 1991, pet. ref'd) (defendant's own testimony was sufficient to establish that he was the driver of the vehicle in a driving while intoxicated prosecution); *cf. Bryant v. State*, 187 S.W.3d 397, 402 (Tex. Crim. App. 2005) (holding that the defendant's stipulation to a prior offense waived any challenge to the absence of proof of the prior offense); *Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.—Amarillo 1987, pet. ref'd) (holding that appellant was estopped from arguing on appeal that the State did not prove the victim's cause of death where appellant's counsel stated on the record at trial that cause of death was not in dispute).

Even assuming, for the sake of argument, that Ramos's trial admission alone is insufficient, we conclude there is otherwise legally sufficient evidence of a common-law marriage. A common-law marriage may be established upon proof of the following elements: "(1) an agreement to be married, (2) after the agreement, the couple lived together in this state as husband and wife, and (3) the couple represented to others that they were married." *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993). These elements are now codified under § 2.401(a)(2) of the Texas Family Code.[6] *See* TEX. FAM. CODE ANN. § 2.401(a)(2). A common-law marriage, "may be shown by the conduct of the parties, or by such circumstances as their addressing each other as husband and wife,

---

[6] That statute provides that

[i]n a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that . . . the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

TEX. FAM. CODE ANN. § 2.401(a)(2).

acknowledging their children as legitimate, joining in conveyances as spouses, and occupying the same dwelling place." *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981). "To establish that the parties agreed to be husband and wife, it must be shown that they intended to create an immediate and permanent marriage relationship, not merely a temporary cohabitation that may be ended by either party." *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App.—Texarkana 2013, no pet.). "Proof of cohabitation and representations to others that the couple are married may constitute circumstantial evidence of an agreement to be married." *Russell*, 865 S.W.2d at 933; *see also Bays v. Bays*, No. 13-20-00202-CV, 2021 WL 3777143, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2021, pet. denied) (mem. op.).

Here, there is evidence of all three elements. With regard to the second and third elements, it is undisputed that Ramos and C.E. lived together in Texas for approximately ten years and that they represented to others that they were married. In communications with law enforcement, Ramos repeatedly identified C.E. as his wife, while C.E. testified that she and Ramos "held each other out as husband and wife." Evidence of the second and third elements may be considered as circumstantial evidence of an agreement to be married. *See Russell*, 865 S.W.2d at 933. Additionally, during their approximate decade-long cohabitation, Ramos and C.E. had four children, whom they raised and supported together along with C.E.'s two children from a previous relationship. Ramos further described having "form[ed] a family" and having a "family relationship" with C.E. Alicia testified that she referred to Ramos as "dad." We conclude that this evidence demonstrates that the couple "intended to create an immediate and permanent marriage

7

relationship, not merely a temporary cohabitation." *Burden*, 420 S.W.3d at 308.

Ramos cites two cases in which our sister courts held that the trial court did not err in concluding there was no common-law marriage in ruling that a witness could not invoke spousal privilege. *See* TEX. R. EVID. 504. However, in those cases, the appellate court reviewed whether the trial court abused its discretion, while deferring to the trial court's role as a fact finder on the evidentiary issue. *See Rodriguez v. State*, No. 08-16-00118-CR, 2018 WL 3372637, at *15 (Tex. App.—El Paso July 11, 2018, pet. ref'd) (not designated for publication); *Green v. State*, No. 04-16-00475-CR, 2017 WL 3430898, at *4 (Tex. App.—San Antonio Aug. 9, 2017, pet. ref'd) (mem. op., not designated for publication). We find these cases inapposite, in that their application would turn the applicable standard of review on its head. Here, the jury implicitly found that Ramos was married to Alicia's mother. Under our legal sufficiency standard of review, we must defer to the jury's role as the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *See Brooks*, 323 S.W.3d at 899.

Considering the foregoing evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Ramos and C.E. had a common-law marriage and that Alicia was therefore Ramos's stepdaughter. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99; *see also Thaung Tin v. State*, No. 03-14-00677-CR, 2017 WL 1550027, at *9–10 (Tex. App.—Austin Apr. 28, 2017, no pet.) (mem. op., not designated for publication) (concluding that there was legally sufficient evidence that the complainant was the stepchild of the defendant for purposes of the prohibited sexual conduct offense based on testimony that

the defendant was married to the complainant's mother and the complainant identified the defendant as her "other father"). We overrule Ramos's sole remaining issue.

### III. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
14th dy of July, 2022.